**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| FARVA JAFRI,<br><br>        Plaintiff,<br><br>             vs.<br><br>SIGNAL FUNDING LLC, a Limited Liability Corporation, 777 PARTNERS LLC, a Limited Liability Corporation, SIGNAL FINANCIAL HOLDINGS LLC, a Limited Liability Corporation, JOSHUA CRAIG WANDER as individual.<br><br>        Defendants. | **Civil Action No.**<br><br><br>JURY TRIAL DEMAND |

**COMPLAINT**

Plaintiff Farva Jafri by and through her attorneys, Hecht Schondorf, LLC, in support of her Complaint in this matter, hereby states as follows:

**PRELIMINARY STATEMENT**

This is an action brought by Plaintiff for damages and injuries Plaintiff has sustained as a result of Defendants' violations of the Equal Pay Act, 29 U.S.C. § 206 *et seq.*, the Illinois Equal Pay Act of 2003, 820 ILCS 112 *et seq.,* the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.,* and common law actions stemming from the Plaintiff's employment. Plaintiff specifically seeks declaratory, injunctive, and equitable relief, as well as monetary damages, to redress Defendants' discriminatory employment practices against Plaintiff, and other matters as set forth below.

## PARTIES

1. Plaintiff Farva Jafri ("Jafri") is a female and a citizen of the State of New York, specifically residing in Armonk, New York.

2. Defendant Signal Funding ("Signal") is a Delaware Corporation with a principal place of business in Dania Beach, Florida and a relevant office located in Highland Park, Illinois. Defendant Signal is a fully owned subsidiary of Defendant Signal Financial Holdings.

3. Defendant Signal Financial Holdings ("Signal Financial") is a Delaware Corporation with a principal place of business in Dania Beach, Florida and a relevant office located in Highland Park, Illinois. Defendant Signal Financial is a fully owned subsidiary of Defendant 777 Partners.

4. Defendant 777 Partners is a Delaware Corporation, with a principal place of business in Miami, Florida. Defendant 777 Partners is the parent company of Signal Financial Holdings ("Signal Financial").

5. At all relevant times, Signal, Signal Financial, and 777 Partners have all met the definition of an "employer" under all applicable statutes.

6. Joshua Craig Wander is a Founder and Managing Partner of 777 Partners, the parent company of the other named corporate defendants. Mr. Wander is a resident of the State of Florida.

## JURISDICTION

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 because this case is brought under the Equal Pay Act, 29 U.S.C. §206(d)(1), a federal statute.

8. The Court has supplemental jurisdiction over Plaintiffs' related claims arising under State law pursuant to 28 U.S.C. § 1367(a).

9. This Court also has proper diversity jurisdiction, under 28 U.S.C. §§ 1332, as Plaintiff is claiming in excess of $75,000 and the Plaintiff and Defendants are of different states.

## VENUE

10. Pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e), venue is proper in this district because a substantial part of the events or omissions giving rise to the actions contained herein occurred in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff has met all of the administrative prerequisites to bringing an action under the Illinois Human Rights Act.

12. Plaintiff timely filed a charge with the United States Equal Employment Opportunity Commission ("EEOC"), on or about February 13, 2018, EEOC Charge No. 440-2018-03167 is attached to this Complaint as part of Group Exhibit A.

13. The EEOC issued a Notice of Right to Sue letter on July 2, 1018. A copy of the Notice of Right to Sue is attached to this Complaint as part of Group Exhibit A.

14. The IDHR issued a Notice of Dismissal for Lack of Jurisdiction on December 13, 2018.

15. As such, Plaintiff's Complaint is timely filed within ninety (90) days of the receipt of the Notice of Dismissal from the IDHR

16. Any and all other prerequisites of this suit have been met.

## COMMON ALLEGATIONS

**General Background Information**

17. Plaintiff Farva Jafri is a female.

18. Plaintiff was employed by the Corporate Defendants from July 26, 2016 to September 28, 2017.

19. During the relevant time period, she was employed as Chief Operating Officer of Signal Funding, Chief Operating Officer of Signal Financial, and as an Associate at Defendant 777 Partners.

20. Plaintiff was initially hired to work at Defendant Signal's Highland Park, Illinois office on July 26, 2016.

**Issues Regarding Plaintiff's Pay as a Female**

21. During her employment, Plaintiff was a member of the executive team serving in the roles set forth above.

22. Plaintiff was responsible for technology, finance, accounting, servicing, funding, operations, regulatory issues, compliance, sales, case management, human resources and administration.

23. Plaintiff shared several responsibilities with Gary Chodes the CEO of Signal, specifically, but not limited to: overseeing operations, oversight of finances and capital calls, recruitment, and assembling pitch desks and models for potential investors.

24. Plaintiff's base salary was $105,000.00 with a minimum guaranteed bonus of $25,000.00 after one year of employment.

25. Despite their overlapping responsibilities, Mr. Chodes base salary was $325,000.00 plus over $175,000 in bonuses.

26. Another comparator to Plaintiff, Lou Vena, was paid $192,500 in base salary. His title was EVP, Operations.

27. Vena, though he had a similar title and role to Jafri, had substantially fewer responsibilities than Jafri. Despite this, he was paid a significantly higher salary, was given a signing bonus of $30,000 and promised a year-end bonus 20% to 40% of the prior year's base salary, a minimum discretionary performance bonus of $45,000 and an initial common unit award of 1.25%. His final offer letter also stated that he would receive nine months of severance upon involuntary termination. This severance package alone amounted to $144,375.

28. One of Jafri's subordinates, Tyson Beauchamp, a VP of Sales with only one role, was paid more than four times higher than Plaintiff. He received $225,000 in base compensation, a $150,000 signing bonus, plus $500 per month for gas stipend, $25,000 in a nuisance fee for litigation, and $75,000 as a tax gross-up.

29. Beyond that, Plaintiff's male subordinates were paid higher base salaries and bonuses. Specifically, the following male comparators were paid higher base salaries of the following nature:

   a. $140,000 – Trevor Scott – male – VP of Sales

   b. $135,000 – Mike Olsen – male – CMO

   c. $125,000 – Mike Walker – male – CTO

   d. $115,000 – James Habel – male – VP of Sales

30. These male employees all made more than Plaintiff.

31. In or around February 2017, Plaintiff emailed then-CEO, Mr. Chodes asking him to discuss her compensation and a potential commission structure. Mr. Chodes did not respond to Plaintiff.

32. On or around March 26, 2017, Mr. Chodes was terminated for unsatisfactory work.

33.     On March 28, 2017 Defendant Wander instructed Plaintiff to move to Miami to work at Defendant 777's offices so that she could build the operations in Florida that she had already built in Illinois. She continued to serve in her roles with Signal and Signal Financial.

34.     Plaintiff moved to Miami in April 2017.

35.     On or around March 29, 2017, Defendants had hired David Hough as interim CEO. Defendant Hough and Plaintiff were both responsible for overseeing operations, transition of the operations to Miami, identification of new office space, hiring personnel, and acquisition of new businesses.

36.     Mr. Hough's base salary was $225,000.000 plus a discretionary target bonus of $175,000.00 or more, depending how the business did.

37.     Plaintiff's salary stayed stagnant.

38.     On or around August 31, 2017, Plaintiff appealed her pay discrepancy to Defendant Wander, her direct supervisor, via email, including a specific comparison with regard to her compensation and that previously given to Mr. Chodes.

39.     Plaintiff set forth to Defendant Wander that she had no opportunity to earn commissions, no profit sharing, referral, milestone, or retention bonuses.

40.     Plaintiff also set forth other male employees who earned more in base pay and/or were given bonuses that Plaintiff was not.

41.     Plaintiff sent a copy of this email to Hough on September 1, 2017.

42.     Neither Defendant Wander nor Hough responded to Plaintiff's email.

43.     Throughout September, Plaintiff emailed Hough about the status of her request and was told that a response would be forthcoming. No response was even received by Plaintiff.

**Abusive Treatment Plaintiff Received as a Female**

44.     In April of 2017, six out of six members of the Board of Defendant 777 Partners were white men.

45.     While Plaintiff was employed there, there were no other females in management.

46.     During this time period, in fact, the only female employees employed by Defendant 777 Partners were part of the support staff, and Plaintiff routinely heard jokes that the women were there to be "seen, not heard."

47.     In or around May 2017, Defendant Wander, Hough, Plaintiff, and another male went out to dinner. At dinner, Defendant Wander told Plaintiff that she needed to hire "hot girls" for sales roles at Defendant Signal, so that they could drive up sales.

48.     At the same dinner, Defendant Wander stated that the 777 Partner's website consisted of too many men and did not look diverse. He told Plaintiff, "Farva, you're a girl. We'll just put you on the website because you are a woman."

49.     On or around July 21, 2017, Wander held a closed-door conversation in his office with Plaintiff and Hough. They were conducting an interview of Jennifer Barrera for a sales candidate position at Defendant Signal. Upon Ms. Barrera's departure from the conference room, Wander remarked upon the perceived physical attributes of Ms. Barrera, stating, "The big tits thing in Miami is out of control!" Hough laughed aloud at Defendant Wander's comment.

50.     Upon information and belief, after meeting Ms. Barrera, Wander approached Rebecca Cortizo, an employee in the Human Resources Department, and asked her to use whichever recruiter Plaintiff was using to hire sales people for 777 Partners' purposes as well, since all of the candidates Plaintiff had presented to Defendant Wander were "hot."

7

51. In or around the summer of 2017, Defendant Wander told Juan Arciniegas, in the presence of Plaintiff that, "we need women, they have a different point of view, but we men will never listen to that point of view," or words to that effect. Plaintiff pointed out that she was a woman and the COO of Defendant Signal, and Defendant Wander responded, "No, you are different, you are just one of the guys."

52. In or around summer 2017, Plaintiff was sitting in Defendant Wander's office with Defendant Wander and another male colleague. That male colleague began commenting on Plaintiff's looks and asked if she was "wearing makeup for once." Plaintiff grew visibly uncomfortable, and Defendant Wander laughed.

53. During a board meeting on August 24, 2017, Plaintiff was in the conference room with the executive board and principals, all of who were men. Defendant Wander began to discuss, Mali Lipscher, a potential new employee at 777 Partners. Wander stated, "Do you know Mali is a lesbian? She checks a variety of boxes for us." All of the men in the room laughed.

54. Following that occurrence, in either late-August or early to mid-September, Josh Wander stated to Ed Lee, another associate, while Plaintiff and a group of male employees was present, "Are you still fucking the HR girl?" Multiple times in front of the Plaintiff, including in groups where she was the only female, Wander talked explicitly about a sexual relationship Ed Lee was having with a HR representative in the company.

55. Upon information and belief, other women in the office felt uncomfortable around Defendant Wander as well. Diana Gramenos told Plaintiff during her first business meeting with Defendant Wander, he spent the time describing how "young and hot" his girlfriend is.

56. Defendant Wander also consistently talked to Plaintiff about his girlfriend's physical attributes.

57.     On more than one occasion, another male employee at 777 Partners would try to hold Plaintiff's hand in his office. He once commented, "I would do anything for a beautiful woman like you," or words to that effect.

58.     In or around summer 2017, Plaintiff spoke to Juan Arciniegas about Defendant Wander's inappropriate comments. Arciniegas agreed with Plaintiff's assessment of Defendant Wander, however, stated that he couldn't do anything about it.

59.     In or around summer 2017, Plaintiff also complained to Edward Gehres about the above issues. Gehres explained that he was powerless, and that, "Make no mistake, this is Josh Wander's company."

60.     In or around August 2017, Plaintiff also spoke to Gregory Bond, the Director of Human Resources about her complaint. Mr. Bond told Plaintiff that he was powerless as well.

### Count I

**Unequal Pay for Equal Work in Violation of Equal Pay Act of 1963, 29 U.S.C. sec. 206(d)(1) (1982) (against Signal, Signal Funding and 777 Partners)**

61.     Plaintiff restates and incorporates by reference Paragraphs 1-60 as Paragraph 61.

62.     The Corporate Defendants paid wages to Plaintiff at a rate less than the rate it paid to male employees for the same or substantially similar work, including specifically those individuals identified in this Complaint.

63.     Plaintiff performed such work under similar working conditions as male employees.

64.     The differential in pay between male and female employees was not due to a bona fide seniority system, a bona fide merit system, or a bona fide system that measures employee earnings by quantity or quality of work, nor was the difference in pay a result of a factor other than sex.

65.     The above discrimination was based on sex, in violation of the Equal Pay Act.

66.     As a direct, legal and proximate result of the discrimination, Plaintiff sustained damages.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in her favor and:

(a) declare that the acts and practice complained of are violations of the EPA;

(b) direct Defendants to make Plaintiff whole for all earnings and benefits she would have received but for Defendant's violations, including the entire amount of the underpayment with interest;

(c) award an additional equal amount as liquidated damages;

(d) award additional damages when this is found to be an intentional action on the part of the Defendants;

(e) award reasonable attorney's fees and costs;

(f) order any other relief that the Court deems just and equitable.

## Count II

### Unequal Pay for Equal Work in Violation of the Illinois Equal Pay Act of 2003, 820 ILCS 112/5 (against Signal, Signal Funding and 777 Partners)

67.     Plaintiff restates and incorporates by reference Paragraphs 1-60 as Paragraph 67.

68.     The Corporate Defendants paid wages to Plaintiff at a rate less than the rate it paid to male employees for the same or substantially similar work, including specifically those individuals identified in this Complaint.

69.     Plaintiff performed such work under similar working conditions as male employees.

70.     The differential in pay between male and female employees was not due to a bona fide seniority system, a bona fide merit system, or a bona fide system that measures employee

earnings by quantity or quality of work, nor was the difference in pay a result of a factor other than sex.

71.     The above discrimination was based on sex, in violation of the Equal Pay Act.

72.     As a direct, legal and proximate result of the discrimination, Plaintiff sustained damages.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in her favor and:

(a) declare that the acts and practice complained of are violations of the EPA;

(b) direct Defendants to make Plaintiff whole for all earnings and benefits she would have received but for Defendant's violations, including the entire amount of the underpayment with interest;

(c) award an additional equal amount as liquidated damages;

(d) award additional damages when this is found to be an intentional action on the part of the Defendants;

(e) award reasonable attorney's fees and costs;

(f) order any other relief that the Court deems just and equitable.

## Count III

**Hostile Work Environment/Sexual Harassment based upon Gender in Violation of Illinois Human Rights Act**
**(Against Defendants Wander, Signal, Signal Funding, 777 Partners)**

73.     Plaintiff restates and incorporates by reference Paragraphs 1-60 as Paragraph 73.

74.     Plaintiff was subjected to harassment by Defendant Wander that was motivated by Plaintiff's gender.

75.     The gender-based discriminatory conduct by Defendant Wander was so severe and pervasive as to create a hostile and abusive work environment for Plaintiff.

11

76. Defendant Wander subjected Plaintiff to a hostile work environment and Defendant Wander, who exercised managerial/supervisory control over Plaintiff, made sexist and sexual comments directed at Plaintiff, or in her presence.

77. Under Illinois law, this creates an independent cause of action against Wander under 775 ILCS 5/2-102(D).

78. Defendants Signal, Signal Financial, and 777 Partners directly created or participated in the creation of the hostile and abusive work environment, failed to supervise subordinates who directly created the hostile and abusive work environment.

79. Moreover, Defendants Signal, Signal Financial, and 777 Partners failed to take action upon receiving information about a hostile and abusive work environment that was occurring.

80. Additionally, Defendants Signal, Signal Financial, and 777 Partners are strictly liable under Illinois law for the actions of Defendant Wander.

81. Herein, Plaintiff suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life, due to these actions by Defendants.

82. As a direct and/or proximate result of the Defendants' unlawful conduct, Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in her favor and:

(a) declare that the acts and practice complained of are violations of the IHRA;

(b) direct Defendants to pay actual damages to Plaintiff;

(c) award pain and suffering damages to Plaintiff;

(d) award additional damages when this is found to be an intentional action on the part of the Defendants;

12

(e) award reasonable attorney's fees and costs;

(f) order any other relief that the Court deems just and equitable.

## Count IV

**Discrimination based upon Gender in Violation of Illinois Human Rights Act
(Against Defendants Signal, Signal Funding, 777 Partners)**

83.     Plaintiff restates and incorporates by reference Paragraphs 1-60 as Paragraph 83.

84.     Plaintiff was treated differently during her employment in comparison to male employees as far as pay and bonuses.

85.     Defendants discriminated against Plaintiff paying her less than less or equally qualified males more money.

86.     The effect of Defendants' discriminatory employment practices has been to deny Plaintiff equal employment opportunities, income in the form of wages, and other benefits of employment because of her gender.

87.     As a direct result of defendants' discriminatory employment practices, Plaintiff has suffered emotional and mental pain and suffering and has been humiliated, embarrassed and otherwise mentally degraded.

88.     Defendants intentionally and knowingly discriminated against Plaintiff in the terms and conditions of her employment.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in her favor and:

(a) declare that the acts and practice complained of are violations of the IHRA;

(b) direct defendants to make Plaintiff whole for all earnings and benefits she would have received but for defendants' discriminatory treatment, including awarding Plaintiff back pay, prejudgment interest, damages for all employment benefits she lost, and any other recoverable compensatory damages;

(c) award other damages as allowed by law, including pain and suffering;

(d) award reasonable attorney's fees and costs; and

(e) order any other relief that the Court deems just and equitable.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

DATED: January 31, 2019

Hecht Schondorf, LLC


___/s/___Justin Burtnett_____

Justin Burtnett.
Hecht Schondorf, LLC
900 Skokie Boulevard #104
Northbrook, Illinois 60062
ARDC #6281100
*Attorneys for Plaintiff*

14