UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FARVA JAFRI,

               Plaintiff,

      v.

SIGNAL FUNDING LLC; SIGNAL
FINANCIAL HOLDINGS LLC; and 777
PARTNERS LLC,

               Defendants.

No. 19 C 645

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Farva Jafri alleges that her former employer paid her less than her male colleagues in violation of the federal and Illinois Equal Pay Acts. Defendants have moved for summary judgment. R. 74. That motion is granted.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948

(7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 2021 WL 4486445, at *1 (7th Cir. Oct. 1, 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Jafri is pro se and so was entitled under Local Rule 56.2 to a notice from Defendants regarding her obligation under Local Rule 56.1 to respond to Defendants' statement of facts and to file her own statement of facts. Defendants did not file service of a 56.2 statement. However, Jafri is an attorney and filed the requisite statements of facts. Therefore, Defendants' failure to file proof of service of a 56.2 notice is inconsequential. *See Ohio Nat. Life Assur. Corp. v. Davis*, 803 F.3d 904, 906 (7th Cir. 2015) (holding that the failure to provide 56.2 notice did not prejudice pro se party "because they'd eventually been able to submit the evidence they thought necessary for an effective defense").

## Background

Jafri was hired by Defendant Signal Funding in September 2016. Signal Funding was founded by Gary Chodes and Joshua Wander. Wander's participation in Signal Funding was through his other businesses, Defendant 777 Partners LLC and Defendant Signal Financial Holdings LLC.

Before Signal Funding, Chodes established and ran a successful litigation funding business called Oasis from 2002 through 2013. Prior to running Oasis,

2

Chodes worked as an investment banker and started and sold at least two other companies. That success attracted Wander, who invited Chodes to start Signal Funding, a new litigation funding business, when Chodes left Oasis. Chodes owned 25% of Signal Funding and 777 Partners owned 75%. The plan was for 777 Partners to provide the lion's share of the start-up funding for Signal Funding.

Chodes served as Signal Funding's CEO and later a partner of 777 Partners. Wander set Chodes's compensation at a base salary of $350,000 and a signing bonus of $100,000. Wander made this decision based on Chodes's experience and responsibility for managing and setting the business strategy for Signal Funding. Chodes believed this compensation was very low considering his experience but understood that it was necessary to get the company off the ground before increasing his compensation. *See* R. 80-2 ¶ 21.

Jafri was the first person Chodes hired for Signal Funding. Unlike Chodes's more than 30 years of experience, Jafri finished college in 2010. She earned a master's degree in public health in 2012, and a joint JD/MBA in 2015. After finishing law school, Jafri worked for a health-data and analytics company for one year at a base salary of $125,000.

Despite her young career, Chodes felt Jafri would be a good fit for Signal Funding based on her breadth of education and her experience having "founded a non-profit, served as authoring, sales and regulatory lead at [the health-data company] and led a turn-around for a legal technology company in the Chicago Loop."

R. 80-2 ¶ 18. Chodes hired Jafri to be his "number two" and paid her "starting rate of

$105,000 with some guaranteed bonuses." *Id.* ¶ 20.

Jafri admits that Chodes based his determination of her compensation on the

following factors:

> (i) Chodes' experience at Oasis in hiring and setting
> compensation for employees, especially those who, like
> Jafri, were his "number two;" (ii) Chodes' concern that he
> would have to pay Jafri's salary "out of my own pocket" if
> Signal Funding struggled during its first year of existence;
> (iii) Jafri's compensation at her prior job at Apervita; (iv)
> Chodes' concern about having enough money left to recruit
> and hire employees away from Oasis; (v) Chodes' concern
> that Signal Funding would need money to defend itself
> from a potential lawsuit by Oasis for hiring some Oasis
> employees; and (vi) Chodes' belief that Jafri would accept
> less money in the first year with the expectation that she
> would make more money after Signal Funding established
> itself.

*See* R. 81 at 5 (¶ 14).

Jafri also admits that "[d]uring the first few months of Signal Funding, Chodes

made all the 'initial key hires,' each of whom (with the exception of Jafri) had once

worked for Chodes at Oasis," including: "(i) Mike Olsen to be the Chief Marketing

Officer, and (ii) James Habel, Trevor Scott, and Tyson Beauchamp as Vice-Presidents

of Sales." *Id.* at 6 (¶ 16). All of these employees were given initial compensation

greater than Jafri's. Chodes testified that he determined their compensation in

accordance with the compensation they received at their prior employer. *See* R. 75-1

at 35-36 (133:1–134:3); at 36-37 (137:6–139:23); 38-39 (145:11–150:2); 39-41 (150:12–

157:5). Although these male employees made more money than Jafri, she does not

argue that their compensation is evidence that she was paid unfairly. This is likely

because these employees had responsibilities that were materially different from Jafri's.

Although Chodes was responsible for hiring Signal Funding's most significant employees, Wander soon directed Chodes to focus his efforts on the business of 777 Partners. For this reason, Chodes required Jafri to assume many of the CEO's responsibilities at Signal Funding. *See* R. 80-2 at 7 (¶ 24) ("All of the roles and responsibilities I had as CEO went to Ms. Jafri."). Chodes directed Signal Funding employees to report to Jafri, who would then report to Chodes. *See* R. 80-2 at 9 (¶ 29) ("I even told Michael Olsen eventually, the only other person who reported to me, that Ms. Jafri was in charge and he should run everything by her, rather than me."). Nevertheless, when Oasis sued Signal Funding for poaching employees, Chodes was responsible for hiring outside counsel to handle the case and monitoring the litigation.

Chodes testified that he later became disillusioned with the business of 777 Partners. This eventually caused him to leave Signal Funding and 777 Partners in March 2017, less than ten months after he hired Jafri.[1]

Wander then hired David Hough on an interim basis to replace Chodes as CEO of Signal Funding. Wander states in his declaration that he hired Hough and determined his compensation based on Hough's reputation and experience. *See* R. 75-14 ¶ 10. Jafri disputes that Hough had prior corporate management experience by

---

[1] Chodes makes more specific allegations in his declaration that are not relevant to this case and the Court will not recount here. Defendants say that Chodes "left"; Chodes says he was fired. The truth is not relevant to Jafri's claims.

citing to his LinkedIn resume. *See* R. 80-1 ¶ 10 (citing R. 80-3). But that document shows Hough has held multiple corporate officer positions and several times served in an interim CEO capacity. *See* R. 80-3. Jafri has no personal knowledge of Hough's professional experiences and offers no evidence to counter Defendants' characterization of his experience.

While an employee of Signal Funding, Jafri also worked for 777 Partners. She identifies Adam Weiss, an associate at 777 Partners, as her "clear comparator." This contradicts Jafri's deposition testimony that another associate Ed Lee was her comparator. Jafri did not mention Weiss during her deposition.

After 14 months, Jafri's employment with Defendants ended on September 28, 2017. Hough and Jafri worked together for only six months.

## Analysis

The Equal Pay Act prohibits employers from paying employees different wages based on gender. 29 U.S.C. § 206(d); *Varner v. Ill. State Univ.,* 226 F.3d 927, 932 (7th Cir. 2000). "To establish a prima facie case of wage discrimination under the [Equal Pay Act]," a plaintiff must show, by a preponderance of the evidence, that: "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Stopka v. Alliance of Am. Insurers,* 141 F.3d 681, 685 (7th Cir. 1998). No proof of discriminatory intent is required. *Id.; see also Varner,* 226 F.3d at 932.

If the plaintiff establishes a prima facie case, the burden shifts to the defendant "to establish one of four statutory defenses." *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 697 (7th Cir. 2006); *Fallon v. Illinois,* 882 F.2d 1206, 1211 (7th Cir. 1989) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974)). According to the Seventh Circuit, the "statutory defenses kick in if the difference in pay is attributed to "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Warren v. Solo Cup Co.*, 516 F.3d 627, 629-30 (7th Cir. 2008) (quoting 29 U.S.C. § 206(d)). The fourth exception is a "broad, 'catch-all' exception and embraces an almost limitless number of factors, so long as they do not involve sex." *Fallon*, 882 F.2d at 1211.[2]

The record contains facts about the compensation for a number of Jafri's former colleagues. However, her brief addresses only three as comparators for her claims: (1) Chodes; (2) Hough; and (3) Weiss.

### 1.    Chodes

Jafri's work was not comparable to Chodes's. Chodes had responsibility for the strategic direction of Signal Funding and Jafri did not. Chodes was a partner with 777 Partners and Jafri was not. In general, Chodes maintained responsibility for the highest-level decision-making such as when the company was sued. Although Jafri

---

[2] The federal and Illinois Equal Pay Acts impose the same requirements and are applied according to the same standards. *See*, *e.g.*, *Hubers v. Gannett, Inc.*, 2019 WL 1112259, at *4 n.8 (N.D. Ill. Mar. 11, 2019); *Lancaster-Williams v. Pods Enters., Inc.*, 2010 WL 2382402, at *13 (N.D. Ill. June 10, 2010).

shared responsibility for much of Signal Funding's administration and was eventually delegated all of it for a time, her lack of responsibility for the company's strategy and other higher level decision-making shows that her responsibilities were materially different from Chodes's. Thus, her lower compensation does not establish a prima facie case of an Equal Pay Act violation.

Even if Chodes was an adequate comparator, the evidence shows that his higher initial compensation was based on a reason other than sex, i.e., his higher former compensation and greater experience. Jafri was only a year out of school when Chodes hired her, whereas he had more than 30 years of experiences starting and managing companies. Both Chodes and Jafri were compensated by Defendants in accordance with their prior compensation and experience. *See Lauderdale v. Illinois Dep't of Hum. Servs.*, 876 F.3d 904, 908-09 (7th Cir. 2017) ("[T]his court has repeatedly held that a difference in pay based on the difference in what employees were previously paid is a legitimate 'factor other than sex.'") (citing cases). This does not constitute a violation of the Equal Pay Act.

### 2.    Hough

Jafri argues that she performed the same work as Hough. Perhaps this is true, because it is not clear that Hough was given responsibility for strategy and higher-level decision-making like Chodes.

But even assuming that Hough was paid more for the same work, Hough had vastly more experience than Jafri when he was hired. No reasonable jury could find that Hough's compensation was set relative to Jafri's based on sex, because the only

8

evidence is that Hough's compensation was set based on his prior experience and compensation.

In any event, Jafri left Defendants about six months after Hough was hired, and Jafri does not allege that in the interim Hough's compensation was increased to an extent that was unequal with any changes in her compensation. In other words, any disparity between Hough's initial compensation and Jafri's is explained by the disparity in their experience and Jafri did not remain with Defendants long enough for that disparity to be rectified based on their actual duties with the companies to the extent that would have been appropriate. This evidence is insufficient to survive summary judgment.

### 3.    Weiss

Jafri did not identify Weiss as a comparator until her brief in opposition to summary judgment. This is reason for the Court to disregard the argument and evidence. But in any event, Weiss made less money than Jafri, *see* R. 85-4 at 2, so his compensation is not evidence that Jafri's pay violated the Equal Pay Act.

### Conclusion

Therefore, Defendants' motion for summary judgment [74] is granted.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated:  July 7, 2022

9